UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOU ANN KASPRZYCKI,

       Plaintiff,

vs.

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

       Defendants.
_____/

No. 17-cv-11220

HON. MARK A. GOLDSMITH

**OPINION & ORDER**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 26) AND**
**DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY (Dkt. 32)**

This matter is before the Court on a motion for summary judgment filed by Defendants Michigan Department of Corrections ("MDOC") and the State of Michigan (Dkt. 26), and Plaintiff Lou Ann Kasprzycki's motion for leave to file a sur-reply in opposition to Defendants' motion (Dkt. 32). Because oral argument will not aid the decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons that follow, both motions are denied.

### I. BACKGROUND

Kasprzycki[1] was employed by MDOC as a Corrections Officer ("CO") from September 14, 2003 until her termination on March 16, 2016. Defendants' Statement of Material Facts ("DSMF") ¶ 1 (Dkt. 26). She worked at the Women's Huron Valley Facility ("WHV"). DSMF ¶ 2.

---

[1] Kasprzycki's name is spelled differently on the docket and complaint than it is throughout the parties' briefing and the amended complaint. Because the briefing, amended complaint, and exhibits use the spelling "Kasprzycki," so too will the Court.

WHV is the only women's prison facility in Michigan. In 2000, MDOC reached a settlement with the United States Department of Justice following a lawsuit:

> [The lawsuit] was over the fact that there were numerous complaints by female offenders of sexual assault and sexual abuse by male staff. It focused primarily on corrections officers at the – at the female facilities within the – within the State, which at that time I believe there were three still facilities.
>
> So the DOJ brought a lawsuit against the Department because it didn't believe we were – the Department was doing enough to protect the female offenders. Which resulted in a settlement eventually. Which one of the conditions as part of, to ensure protection of the female offenders, was to only have female officers supervise female offenders in a period or time where they could be in a state of undress.

8/23/2018 Patterson Dep., Ex. 2 to Pl. Resp., at 61 (Dkt. 29-3). In 2004, the Sixth Circuit upheld MDOC's designation of 250 Correctional Officer and Residential Unit Officer positions in female prisons as "female only" against challenges that this violated Title VII. Everson v. Mich. Dep't of Corrs., 391 F.3d 737 (6th Cir. 2004). In this context, the court determined that being female was a bona fide occupational qualification ("BFOQ") permitted under Title VII.

Until about 2009 – when Michigan's three women-only facilities were consolidated into only one, WHV – only staff who worked in the housing units were required to be women. 8/23/2018 Patterson Dep. at 63. In 2009, the number of women-only positions expanded to include non-housing unit positions, such as food service officer, yard control officer, and electronic monitor officer. Id. at 63, 99. This caused staffing issues at WHV, as some positions could only be staffed by women. Id. at 65.

Employees at WHV were sometimes "mandated," or required to work overtime following their regularly-scheduled shift. Kasprzycki Dep., Ex. 1 to Pl. Resp., at 75 (Dkt. 29-2). Kasprzycki estimated that she was mandated at WHV approximately one to two times per week. Id. at 76. She testified that this was "overwhelming," "[w]ondering every day if you went to work if you're

2

going to have to spend another eight hours there or even an hour. It took ahold [sic] of you mentally and physically[.]" Id. at 88. Kasprzycki testified that she would rarely see a male CO mandated. Id. at 79.

Article 15 of the collective bargaining agreement between the MDOC and the Michigan Corrections Organization discusses a CO's eligibility to transfer. Security Unit Agreement, Ex. H to Defs. Mot. (Dkt. 26-9). There are three types of transfers: seniority-based, closer-to-home, and a one-for-one or exchange. 8/23/2018 Patterson Dep. at 45-46. For a "seniority-based transfer," an employee must "[h]ave no record of disciplinary action or unsatisfactory rating during the two years preceding the date of the transfer request[.]" Security Unit Agreement at 96. A closer-to-home transfer is "hardship based," and allows an employee who resides more than forty miles from his or her place of employment to transfer to a facility that is within forty miles of his or her residence. 8/23/2018 Patterson Dep. at 46. A one-for-one transfer is an informal process by which an individual looking to transfer to a different facility finds another person at that facility who wants to transfer to the individual's current facility. Id. at 46-47.

Since 2005, MDOC has had a "transfer freeze" in place at WHV. WHV Transfer Freeze, Ex. K to Defs. Mot., at PageID.423 (Dkt. 26-12).[2] During a transfer freeze, an individual's ability to transfer to another facility is restricted, although one-for-one transfers could be allowed if approved by the deputy director. 8/23/2018 Patterson Dep. at 48.

An EEOC Report from October 12, 2011 found that MDOC's "broad application of the BFOQ has a negative impact on female officers' ability to transfer to other correctional facilities."

---

[2] Defendants state that the freeze began in 2008 in their statement of material facts, see DSMF ¶ 19, but Exhibit K shows a memorandum, dated August 12, 2005, placing a freeze on the transfer of Corrections Officers at WHV. Transfer Freeze Notice at PageID.424. This discrepancy is immaterial to the disposition of the summary judgment motion.

EEOC Findings, Ex. 5 to Pl. Resp., at 430 (Dkt. 29-6). The report stated that "female officers should be allowed the same rights the male officers are given when it comes to being transferred to other Correctional Facilities. . . . As currently implemented, the gender based policy disqualifies females from positions without a clear analysis and consideration of non-gender specific alternatives." Id. at 431.

An employee is unable to transfer if he or she has a disciplinary record. 8/23/2018 Patterson Dep. at 47. Formal discipline stays on an employee's record for two years, and then, provided there is no further discipline, "falls off." Id. However, because one-for-one transfers are discretionary, the warden would review the discipline and then determine whether to approve the transfer. Id. at 49. Seniority-based and close-to-home transfers are not permitted at all if an employee has been disciplined within the last two years. Id.

Kasprzycki was disciplined several times throughout her employment:

- She was disciplined for a refusal to work mandatory overtime on June 3, 2011. MDOC Disciplinary Records, Ex. A to Defs. Mot., at MDOC_01058 (Dkt. 26-2). The reason for her refusal was a bleeding nose.

- She also refused to work mandatory overtime on May 27, 2012. MDOC Disciplinary Records, Ex. B to Defs. Mot., at MDOC_01085 (Dkt. 26-3). Kasprzycki stated that she could not stay due to daycare arrangements for her grandchildren. Id. at MDOC_01089.

- In November 2013, she was disciplined for unsatisfactory time and attendance from May 2013 through September 2013. MDOC Disciplinary Records, Ex. C to Defs. Mot., at MDOC_00989 (Dkt. 26-4).

- She was also disciplined in June 2014, for unsatisfactory time and attendance for the time period from November 7, 2013 to February 6, 2014. MDOC Disciplinary Records, Ex. D to Defs. Mot., at MDOC_01015 (Dkt. 26-5). Kasprzycki used sixteen hours of sick time, despite not having any sick time available, and used more FMLA time than she had available. Id. at MDOC_01017.

- On February 7, 2015, Kasprzycki fell asleep during her shift, and received a five-day suspension as discipline. MDOC Disciplinary Records, Ex. E to Defs. Mot., at MDOC_00955-00956 (Dkt. 26-6). She was also placed on a "last-chance agreement." DSMF ¶ 10.

- On October 13, 2015, Kasprzycki witnessed a fellow corrections officer move a video camera in a staff room, but did not report this. MDOC Disciplinary Records, Ex. F to Defs. Mot., at MDOC_00882 (Dkt. 26-7).

- On December 16, 2015, Kasprzycki was found reading a magazine while on duty. MDOC Disciplinary Records, Ex. G to Defs. Mot., at MDOC_00916 (Dkt. 26-8).

As Kasprzycki was on a last-chance agreement, she was terminated a result of the October 13, 2015 and December 16, 2015 incidents. DSMF ¶ 14.

Kasprzycki brought the instant case, alleging that MDOC's practices of denying her transfer requests while allowing male COs to transfer, and issuing adverse disciplinary actions to her but not to similarly-situated male COs, constitute discrimination on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964.

## II. STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. Scott, 550 U.S. at 380; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical

5

doubt as to the material facts," Scott, 550 U.S. at 380 (quoting Matsushita, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," id. (quoting Anderson, 477 U.S. at 247-248) (emphasis in original); see also Babcock & Wilcox Co. v. Cormetech, Inc., 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.").

### III. ANALYSIS

Defendants raise two arguments in their summary judgment brief. First, they contend that Kasprzycki has failed to establish a prima facie case for sex discrimination. Second, they contend that she has failed to exhaust her administrative remedies with respect to any BFOQ-related claims. The Court will address each in turn.

#### A. Sex discrimination

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges or employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). A plaintiff seeking to establish a Title VII claim may do so either by offering direct proof of discrimination, or by presenting circumstantial evidence under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Ondricko v. MGM Grand Detroit, LLC, 689 F.3d 642, 649-650 (6th Cir. 2012). Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Id. at 650. Circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." Id. The parties disagree about which type

of evidence Kasprzycki has offered, and which standard should be used in analyzing Kasprzycki's Title VII claim.

Kasprzycki argues that she has shown direct evidence of discrimination. Pl. Resp. at 17 (Dkt. 29). The Court agrees. "[A] facially discriminatory employment policy . . . is direct evidence of discriminatory intent." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). Here, WHV's staffing policy (the "BFOQ Policy")[3] is facially discriminatory, as it requires certain positions at WHV to be staffed by women. And while Kasprzycki arguably challenges the effects of this policy on discipline and transfer, there is also evidence that she is challenging the policy itself. See Am. Compl. ¶ 30 (alleging that "MDOC's implementation of the 2009 female-only assignments has required . . . female COs at Huron Valley to work excessive, mandatory overtime hours in order to staff MDOC's female-only assignments and has impeded . . . female COs from transferring"); ¶ 57 (asking the Court to "[e]njoin Defendants from further discrimination in job assignments on the basis of sex at Huron Valley") (Dkt. 6).

Further, there is substantial evidence showing the connection between the BFOQ Policy and an inability to transfer. 8/23/2018 Patterson Dep. at 119-120 (Q: "To me the BFOQ policy and the transfer freeze are inextricably intertwined; would you agree with that characterization?" A: "Pretty much, yes."). The same is true for the connection between the policy and more difficult working conditions for women. See id. at 65 (stating that implementing the BFOQ policy "has caused some staffing issues"); 75 (agreeing that if there is a particular assignment that needs to be filled by a female officer and the shift is short-staffed, individuals from the prior shift may have to

---

[3] Jonathan Patterson, the Human Resources Director for MDOC, "wouldn't say it's a policy," as "BFOQ is the establishment of a special position requirement." 8/23/2018 Patterson Dep. at 60. For ease of understanding, however, the Court will use the phrase "BFOQ Policy" throughout this opinion to refer to the requirement that certain positions at WHV be staffed by women.

7

work back-to-back shifts). Thus, the Court is satisfied that the case should proceed under a direct evidence framework, as this evidence requires a conclusion that discrimination was at least a motivating factor in MDOC's actions.[4]

"In direct evidence cases, once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination." Nguyen, 229 F.3d at 563.

Defendants contend that Kasprzycki's inability to transfer and her ultimate termination were due to discipline that she received, not any sex-based discrimination. See Defs. Mot. at 13-14; Defs. Reply at 3 (Dkt. 31). Defendants argue that an employee is only eligible for transfer if she has "no record of disciplinary action . . . during the two years preceding the date of the" transfer request or date of filling the position, Security Unit Agreement at 96, 98, and Kasprzycki had six active disciplinary actions on her record at the time of her termination. Defs. Mot. at 13. They point out that she was working under a last-chance agreement. Id. Defendants also contend that there was a "transfer freeze" in place at WHV during the time of Kasprzycki's employment, which applied to all officers, regardless of gender. Transfer Freeze Notice at PageID.424. Kasprzycki was denied transfers and discharged "solely due to her disciplinary record," and "[a]ny alleged BFOQ was not the reason." Defs. Mot. at 14.

Kasprzycki, however, contends that at least some of the discipline she received stems from the BFOQ Policy. Kasprzycki was twice disciplined for refusing to work overtime, MDOC Disciplinary Records, Exs. A and B to Defs. Mot., but she argues that women are required to work

---

[4] For this reason, the Court does not examine Kasprzycki's claims under the burden-shifting framework of McDonnell Douglas, which applies in cases involving circumstantial evidence of discrimination.

overtime far more often than men, due to the need for women to fill certain positions, Kasprzycki Dep. at 79; see also 3/26/2018 Patterson Dep., Ex. 3 to Pl. Mot., at 44 (Dkt. 29-4) (testifying that all of the employees he recalled being disciplined at WHV for refusing mandatory overtime were female). She was also disciplined for falling asleep at work, which she argues only occurred because she was working her second eight-hour shift after being required to work overtime. Kasprzycki Dep. at 98. Although she received discipline for attendance issues, she testified that she had to take "stress leaves," id. at 25, and that the "mandate situation" affected her stress and anxiety, id. at 88.

Kasprzycki also takes issue with Defendants' characterization of the limits on transfer. Kasprzycki points out that the inability to transfer due to discipline is only for seniority-based and close-to-home transfers; an individual can still complete a one-for-one transfer regardless of any discipline. See 8/23/2018 Patterson Dep. at 49 (explaining that one-for-one transfers depend on the warden's discretion). Kasprzycki also argues that an individual can complete a one-for-one transfer during a transfer freeze, id. at 48 (one-for-one transfers "probably would be allowed" but "would have to be approved by the deputy director because only the deputy director can make any exceptions to a transfer freeze"), but says that she was told she would need to find a female replacement, Kasprzycki Dep. at 80-81; but see id. at 18-19 (Q: "But you admit that you never were required to find a female corrections officer to replace you as a condition for your transfer, that's what this says?" A: "Correct."). And at any rate, the reason for the transfer freeze in the first place was because of the need to keep women at WHV. 3/26/2018 Patterson Dep. at 29 (Q: "And why was that freeze necessary as far as you know or what were you told about why it was being done?" A: "Because of the necessity to have enough female staff to fill the BFOQs, so there

9

couldn't be – there had to be a transfer freeze to, you know, keep sufficient staff at a – you know, at a safe level.").

Viewing the record in the light most favorable to Kasprzycki, a jury could reasonably find that Kasprzycki's discipline and inability to transfer were due to discrimination based on sex. Without the requirement that certain positions at WHV be staffed by women, a jury could find that Kasprzycki would not have faced discipline, would not have been prohibited from transferring, and/or would not have been terminated.

There is an exception to the prohibition of discrimination on the basis of sex – a defendant can show that sex was "a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." Everson v. Mich. Dep't of Corrections, 391 F.3d 737, 747-748 (6th Cir. 2004). In Everson, the Sixth Circuit set forth three requirements to guide the court in determining whether a defendant had established a BFOQ defense: first, an employer must have a "basis in fact" for its belief that gender discrimination is reasonable necessary to the normal operation of its business; second, the job qualification must relate to the essence or central mission of the employer's business; and third, the employer must establish that no reasonable alternatives exist to discrimination on the basis of sex. Id. at 748-749.

As set forth supra, the Sixth Circuit determined in 2004 that gender constituted a BFOQ for approximately 250 Correctional Officer and Residential Unit Officer positions in housing units in Michigan's female prisons. Id. at 740, 761. But the Sixth Circuit "emphasize[d] the limited nature of [its] holding," stressing that it did not "hold that gender constitutes a BFOQ for positions in Michigan's female prisons beyond the approximately 250 positions we have discussed." Id. at 761. Kasprzycki takes issue with the 2009 expansion of the BFOQ Policy, Pl. Resp. at 19, and

10

thus Everson does not dictate this Court's decision regarding whether gender is a BFOQ for these more recently-added positions.

Defendants did not set forth a BFOQ defense in their summary judgment brief (other than to argue that Kasprzycki failed to exhaust these claims, discussed infra). They attempt to argue in their reply brief that gender is a BFOQ for all of the positions added in 2009. Defs. Reply at 4. "Generally, new arguments or issues are waived when they are raised for the first time in a reply brief." Frank v. U.S. Food & Drug Admin., 998 F. Supp. 2d 596, 602 (E.D. Mich. 2014). Replies "do not provide the moving party with a new opportunity to present yet another issue for the court's consideration." Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008) (quoting Novosteel SA v. U.S., Bethlehem Steel Corp., 284 F.3d 1261, 1274 (Fed Cir. 2002)). The Court declines to consider any of the new arguments raised in Defendants' reply brief. Accordingly, there is no reason to allow Kasprzycki to file a sur-reply in response, and her motion requesting leave to do so is denied.

Even if the Court were to consider the BFOQ defense belatedly raised in Defendants' reply brief, it is of no help. Defendants' only argument is that the Michigan Court of Claims addressed the 2009 BFOQ Policy expansion in Buckner v. Mich. Dep't of Corrections, No. 14-000267-MK, and therefore this Court should also find that the expansion is justified. Defs. Reply at 4. But Defendants cite no authority for finding that the Michigan Court of Claims' decision is binding on this Court. Cf. U.S. v. Miami Univ., 294 F.3d 797, 811 (6th Cir. 2002) ("[F]ederal courts owe no deference to a state court's interpretation of a federal statute."). Regardless of what this Court thinks of the reasoning used in Buckner, the evidence before this Court is not the same as that which was presented to the Michigan Court of Claims, and Defendants have not put forth any

argument as to why the evidence in this case establishes a BFOQ defense. Therefore, they have not shown that they are entitled to summary judgment on Kasprzycki's Title VII claim.

B. **Exhaustion**

Defendants separately argue that Kasprzycki has not exhausted the administrative prerequisites necessary to bring a Title VII claim. Defs. Mot. at 14.[5] Title VII requires a plaintiff to timely file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Puckett v. Tenn. Eastman Co., 889 F.2d 1481, 1486 (6th Cir. 1989). Defendants contend that Kasprzycki's EEOC charge does not mention anything about the BFOQ being the cause of any discrimination, her inability to transfer, or her discharge. Defs. Mot. at 16. Therefore, Defendants contend that Kasprzycki has failed to exhaust her administrative remedy as to any claim related to any BFOQ or any adverse action cause by any BFOQ. Id.

"As a general rule, Title VII plaintiffs cannot bring claims in a lawsuit that were not included in their EEOC charge." Taylor v. Western and Southern Life Ins. Co., 966 F.2d 1188, 1194 (7th Cir. 1992). However, the exhaustion requirement "is not meant to be overly rigid, nor should it 'result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading.'" Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 732 (6th Cir. 2006) (quoting EEOC v. McCall Printing Co., 633 F.2d 1232, 1235 (6th Cir. 1980)). An EEOC complaint should be "liberally construed" to encompass all claims that are reasonably expected to grow out of the discrimination charge. Id.

---

[5] Defendants argue in their reply brief that Kasprzycki failed to timely file her EEOC charge. Defs. Reply at 1. Defendants' opening brief contains no argument that Kasprzycki's charge was untimely. The Court finds that Defendants have waived this argument. Frank, 998 F. Supp. 2d at 602.

Kasprzycki's EEOC charge states that the cause of discrimination is based on sex, retaliation, and "other." EEOC Charge of Discrimination, Ex. I to Defs. Mot. (Dkt. 26-10). It states that the correctional officers at WHV were "overworked," and that Kasprzycki "was mandated often to work 17 hours in a row for six days in a row," id. She claims that she was "subjected to different terms and conditions of employment because of my sex," and that female corrections officers were "mandated" to stay when the male COs were not. Id.

Construing the EEOC charge liberally, the Court finds that Kasprzycki has raised the claim that she was treated differently because of the BFOQ Policy, even if she did not state it in explicit terms. "[M]ost EEOC complaints are completed by laypersons rather than lawyers," and "[t]o compel the charging party to specifically articulate in a charge filed with the Commission the full panoply of discrimination which he may have suffered may cause the very persons Title VII was designed to protect to lose that protection . . . ." Taylor, 966 F.2d at 1195 (quoting Jenkins v. Blue Cross Mutual Hopsital Insurance, Inc., 538 F.2d 164, 168 (7th Cir. 1976)). The Court will not dismiss Kasprzycki's claim for failure to exhaust.

## IV. CONCLUSION

For the reasons provided, Defendant's motion for summary judgment (Dkt. 26) and Plaintiff's motion for leave to file a sur-reply (Dkt. 32) are denied.

SO ORDERED.


Dated: July 30, 2019                        s/Mark A. Goldsmith
    Detroit, Michigan                MARK A. GOLDSMITH
                                                United States District Judge